ECONOMY GROCERY STORES CORPORATION *vs.* M. J. HART & others.

Suffolk.     November 10, 1930. — January 5, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Contract,* What constitutes, Cancellation. *Agency,* Undisclosed principal. *Sale. Practice, Civil,* Conduct of trial: charge to jury; Exceptions.

At the trial of an action for breach of an alleged contract by the defendant to sell beans to the plaintiff, there was evidence that the plaintiff ordered the beans of a broker doing business in the same city in this Commonwealth; that, following an exchange of telegrams on November 8 and 9 between the broker and the defendant, whose place of business was in Michigan, the defendant on November 9 sent the

broker a telegram confirming the terms of the sale and mailed to him a contract of sale in writing signed by the defendant; that on November 9, after receipt of the defendant's telegram of confirmation, the plaintiff and the broker had a conversation at which the broker agreed to "take one car [of beans] off . . . [the plaintiff's] hands" and the plaintiff agreed to "give" the broker "a car"; that on November 12, the defendant received from the broker a memorandum to the effect that the beans had been sold to the plaintiff, "joint account with" the broker; that the defendant on the same day sent a telegram in reply to the broker stating that he would not accept the order on the basis of the broker's memorandum and that the sale to the plaintiff was cancelled; and that on November 14 the broker sent and the defendant received a telegram stating that the contract of sale had been signed by the plaintiff and that the plaintiff would not accept the defendant's cancellation. The trial judge denied a motion by the plaintiff that a verdict be ordered in his favor. There was a verdict for the defendant. *Held,* that

(1) An exception by the plaintiff, to the admission in evidence of a letter of November 15 from the defendant to the broker, must be overruled since, if there were error in its admission, the error was cured by the subsequent introduction in evidence, without objection by the plaintiff, of a letter written by him to the defendant in reply;

(2) All the evidence at the trial showed that the parties intended to make a contract of sale only upon the execution of a formal contract in writing;

(3) A finding was warranted that the defendant's telegram of revocation and cancellation was delivered to the broker before he had procured the signature of the plaintiff to the contract signed by the defendant;

(4) The defendant had a right to refuse to be bound by a contract supposed to be with the plaintiff while in fact the plaintiff was in whole or in part the undisclosed agent of the broker;

(5) The plaintiff's motion properly was denied.

A general exception to a charge to a jury, without specification of particular portions alleged to be objectionable, must be overruled.

CONTRACT, against "M. J. Hart, F. C. Hart, John T. Hart, and George E. Hart, doing business under the firm name and style of Hart Brothers." Writ dated January 29, 1929.

Material evidence at the trial in the Superior Court before *Weed,* J., is stated in the opinion. The judge denied a motion by the plaintiff that a verdict be ordered in its favor. There was a verdict for the defendants. The plaintiff alleged exceptions.

The case was submitted on briefs.

*S. T. Lakson,* for the plaintiff.

*J. R. Murphy & J. E. Macy,* for the defendant.

PIERCE, J.  This is an action of contract wherein the plaintiff seeks to recover damages because of the alleged refusals of the defendants to deliver two carloads of beans in accordance with their alleged contract with the plaintiff.  The answer is a general denial.  At the close of all the evidence, subject to the plaintiff's exception, the judge denied its motion that the jury be ordered to return a verdict for the plaintiff; he also refused to give certain instructions requested by the plaintiff.  The jury found for the defendants.  The case comes before this court on the plaintiff's exceptions to the refusal of the judge to order a verdict in its favor and to give certain requests for rulings, to the admission of certain evidence and to the charge.

The facts as they appear in the bill of exceptions are in substance as follow:  The plaintiff, having as its president one Joseph Rabinovitz, is a corporation with a place of business in Boston, Massachusetts.  The defendants are a copartnership, located in Saginaw, Michigan, and are engaged in the business of buying and selling farm products including beans.  M. J. Hart will be referred to as the defendant.  W. F. Childs is a commission broker in Boston doing business under the name of W. F. Childs Company.  Prior to the transactions here under consideration, the defendants had done business with Childs and with other merchandise brokers in Boston.

On November 8, 1928, the plaintiff's president ordered of Childs two carloads of beans, and Childs wired the defendants, " Sold Economy Stores 800 bags choice hand picked pea beans, December, their option.  $8.25 per 100 lbs. brokerage 10c per bag; wire answer immediately."  On November 9, 1928, the defendants sent the following telegram to Childs: " 8.40 December shipment our option Best can do Economy order "; and Childs wired the defendants: " Economy accepts two cars wire acknowledgment."  The defendants then sent Childs the following telegram: " Confirm Economy two cars choice hand picked pea beans December 8.40 Michigan quoting prompt same offer subject to confirmation," and wrote him a letter read-

ing in part: " Our various exchanges of wires today result in our booking the following business . . . Economy Grocery Stores Co. 800 — 100# Sacks C. H. P. Pea Beans $8.40 f. o. b. Mich. Alma Rate, December shipment, sellers option. We are enclosing . . . Official Sales Contract properly executed on our part, covering the sale to the Economy Groc. Stores Co. on which they should affix their signature on the original contract and return to complete our file."

In the letter of November 9, 1928, the defendants enclosed a contract signed by them, which the plaintiff introduced in evidence as Exhibit 1. This contract had as its heading the following words: " Official Sales Contract Michigan Bean Jobbers Association In effect October 1, 1926." The first unnumbered paragraph of this document reads: " Hart Brothers of Saginaw, Mich., agrees to sell and ship for Economy Grocery Stores Co. of Boston, Mass. and Economy Grocery Stores Co. of Boston, Mass. agrees to buy, receive and pay for 800 — 100# bags Choice H. P. Mich Pea Beans at $8.40 per hundred weight. Bags to be uniform, standard, sound and clean. Time of shipment December, 1928, sellers option." This paragraph is followed by the terms, set out in paragraphs numbered one to fifteen inclusive. When received in evidence this instrument was signed: " Purchaser Economy Grocery Stores Co. By J. R.    Broker W. F. Childs Co. W. F. Childs.    Seller Hart Bros. Per M. J. Hart." On the reverse side there is a definition of grades which are not here material. It was admitted at the trial that the signature of the seller was authorized, and it appears that the signature of the plaintiff was signed by its president.

On Monday, November 12, 1928, the defendant received in the mail from Childs a memorandum which reads: " No. 1378 Sold to Joseph Rabinovitz, 205 A St., Boston, Mass. For account of Hart Bros. F. O. B. Michigan    Terms regular, arrival draft examination allowed    option, as to Date of sale 11/9/28    Date confirmed    Date billed. When ship — December    Shipment sell's option, as to

when.    2 cars (800) bags CHP Pea Beans    $8.40 100 lbs.  Bought joint account with W. F. Childs Company, profits, or losses to be divided.  If one wants to sell and the other hold they each may take a car and if any margin required by shipper each party will margin his own car . . . . If incorrect, advise immediately, Subject to confirmation of seller.  Seller guarantees goods to conform to the National Pure Food Law.  All disputes arising under this contract shall be arbitrated in the usual manner.  This memo. becomes void when sale is covered by contract."  Upon receiving the above " memorandum " the defendant wired Childs:  " 1928 Nov 12 P M 3:01 Saginaw, Mich 12    W. F. Childs & Co. Boston, Mass. Will not accept order basis sales ticket 9th    Economy cancelled."

As respects this telegram the defendant testified that he did not know whether " November 12 P.M. 3:01 " is the arrival or sending date; that he did not deliver the telegram to the telegraph company but telephoned it; that he does not know when it was sent; that he telephoned it at approximately eleven or eleven-thirty on the morning of November 12; that at the time he received the memorandum, *supra,* he did not know that the contract, *supra,* had been mailed by his firm on November 9; that after he received the memorandum he made no attempt to communicate with Childs for an explanation of it and did not communicate with the plaintiff; that he first learned of the contract when he received a telegram from Childs stating that it had been signed; that he received from Childs in reply to his telegram of November 12 a telegram which read:  " Rabinovitz and Economy are the same. To avoid controversy bill Economy as confirmed "; that he wired Childs on November 13:  " Cannot now reinstate Economy order . . ."; that Childs sent on November 14 the following telegram:  " Your contract duly signed by Economy, cancellation not accepted by them "; and that he received from Childs under date of November 13 the following letter:  " Hart Bros.  Saginaw, Mich.  Gentlemen:  Enclosed is signed contract from Economy Grocery

Stores Co. covering their purchase of 800 bags of CHP Mich. Pea Beans for December shipment."

Subject to the plaintiff's exception, the judge admitted in evidence a letter dated November 15, 1928, sent by the defendants to " W. F. Childs Co.," and thereafter, without objection, the defendants introduced in evidence a letter, dated November 19, 1928, sent by the plaintiff to the defendants, wherein the plaintiff, by J. Rabinovitz, replied to the letter of the defendants to Childs, saying in part and as a reason for sending the letter, " Mr. Childs has turned your letter over to me and I have read it with a good deal of surprise.  We have a signed contract from you and whether the name was Rabinovitz or Economy Grocery Stores Corporation makes no particular difference, it so happens that I am president of the Economy Grocery Stores."  The letter of November 15 became incorporated by reference in the letter of November 19 and the error of its admission, if it were such, was cured upon the introduction of the plaintiff's letter of November 19.  It was simply a question of the order of proof, and the plaintiff's exception in this respect is overruled.

Rabinovitz testified, in substance, that he was president and treasurer of the plaintiff corporation and was also buyer of its merchandise; that he asked Childs for a quotation of prices on beans; that he offered Childs $8.25 for said beans; that he authorized Childs to send the telegram, *supra,* " Economy accepts two cars wire acknowledgment "; that later in the day when Childs said to him, " Your beans are confirmed," he said, " I am afraid I am buying too much beans; $8.40 is rather a high price at the present time," and Childs said, " I will take one car off your hands if you think you are in wrong," and Rabinovitz said, " Well, go ahead, I will give you a car." " Rabinovitz further testified that the purport of his conversation with Childs after Childs told him ' your beans has [*sic*] been confirmed ' was not that he was going to carry a car for Childs but that Childs would pay his own draft when the beans would arrive; that sometimes he bought cars of beans in his own name but that when he bought

them in his own name he did not buy them for the Company." Rabinovitz further testified that "when he bought from a seller beans through Mr. Childs he would get a contract; that in the flour and bean business 'we always have contracts.'" The record discloses the following questions to and answers by Rabinovitz in respect to the broker making out "sales tickets": "Q. Isn't it your observation that the broker that you buy through always makes out a sales ticket in duplicate and gives one to each party? A. Well, I don't remember getting sales tickets, as I say in other lines they do but in the bean and flour line they get contracts. Q. You do get sales tickets sometimes. A. Sometimes, in a general way, we get those confirmations, like for twenty or twenty-five packages of goods but for car loads we always get contracts. Q. Well, isn't it possible that you received these duplicate sales slips . . . . A. No, sir. Q. Have you looked in your files? A. Yes. Q. Did you do that personally? A. Never received them; I gave my attorney . . . all the correspondence and contracts, and it is right here."

Independently of this testimony, it is clear from all the evidence that Childs as a merchandise broker did not sign and deliver to the plaintiff or to the defendants bought and sold notes; and it is manifest from the testimony of Rabinovitz and from all the evidence that all parties intended that the negotiations for the sale of the two carloads of beans should be confirmed only upon the execution and exchange of a formal contract of sale. Upon the assumption that such was the intention of both plaintiff and defendants, the basic question for decision before the jury was, Did the defendants revoke and cancel their agreement to sell the beans to the plaintiff before their agent, Childs, had delivered the contract signed by them to the plaintiff and it had been signed by Rabinovitz as the plaintiff contends?

The evidence upon this issue would warrant the jury in finding that the telegram of revocation and cancellation was delivered to Childs before he had procured the signature of the plaintiff to the contract signed by the

defendants. The evidence also would warrant a finding that the agreement between Childs and Rabinovitz was made before there was any confirmation of it by the defendants, and, if so, would require a ruling that the defendants had a right to refuse to be bound by a contract supposed to be with the plaintiff while in fact the plaintiff was in whole or part the undisclosed agent of the broker, Childs. *Coddington* v. *Goddard,* 16 Gray, 436.

The exception to the charge was general without pointing out particulars; it was irregular, and cannot be sustained. *McMahon* v. *O'Connor,* 137 Mass. 216. The plaintiff's requests for instructions have been considered in so far as they are argued in its brief. The remaining requests for rulings and instructions are deemed to be waived. It follows that the motion was denied rightly and that all exceptions must be overruled.

*Exceptions overruled.*